# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **ROBERT U.,**[1] | Case No. 3:20-cv-1817-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **KILOLO KIJAKAZI,** Acting Commissioner of Social Security, | |
| Defendant. | |

Kevin Kerr, KERR ROBICHAUX & CARROLL, PO Box 14490, Portland, OR 97293. Of Attorneys for Plaintiff.

Scott Erik Asphaug, Acting United States Attorney, and Renata Gowie, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Justin Lane Martin, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff Robert U. seeks judicial review of the final decision of the Commissioner of the

Social Security Administration (Commissioner) denying Plaintiff's application for Disability

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

PAGE 1 – OPINION AND ORDER

Insurance Benefits (DIB) under Title II of the Social Security Act (Act). For the reasons below, the Court reverses and remands the Commissioner's decision.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground on which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff applied for DIB on November 21, 2017, alleging disability beginning on January 30, 2013. AR 66. The agency denied his claim both initially and upon reconsideration, and Plaintiff requested a hearing. AR 83, 89, 93. Plaintiff appeared for a hearing before an ALJ in October 2019. AR 29. At the hearing, Plaintiff amended the alleged onset date to November 13, 2016. AR 48. Plaintiff's date of birth is April 20, 1963 and he was 53 years old as of the amended alleged disability onset date. AR 67. The ALJ issued a decision denying Plaintiff's claim for benefits. AR 13-24. Plaintiff requested review of the ALJ's decision, which the Appeals Council denied. AR 1. Accordingly, the ALJ's decision is the final decision of the agency and Plaintiff seeks judicial review of that decision.

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R.

§§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.    Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.    Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the

Commissioner must show that the claimant can perform other work that exists in significant

numbers in the national economy, "taking into consideration the claimant's residual functional

capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966

(describing "work which exists in the national economy"). If the Commissioner fails to meet this

burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however,

the Commissioner proves that the claimant can perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54;

*Tackett*, 180 F.3d at 1099.

**C.  The ALJ's Decision**

As a preliminary step for Plaintiff's DIB claim, the ALJ found that Plaintiff met the

insured status requirements of the Act through December 31, 2016. AR 15. The ALJ then

proceeded to the sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since January 30, 2013. *Id.* At step two, the ALJ determined that

Plaintiff suffered medically determinable severe impairments of degenerative disc disease of the

lumbar spine, status post posterior fusion, residuals from left hand injury, and unspecified

neurocognitive disorder. *Id.* At step three, the ALJ determined that Plaintiff does not have an

impairment that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404,

Subpart P, Appendix 1. AR 16.

The ALJ next determined Plaintiff's RFC and found that Plaintiff could perform:

> light work as defined in 20 CFR 404.1567(b) except: He can
> frequently climb ramps and stairs. He cannot climb ladders, ropes,
> or scaffolds. He can frequently balance, stoop, kneel, and crouch.

> He can occasionally crawl. He is limited to occasional handling,
> fingering, and feeling with the non-dominant left upper extremity.
> He should avoid exposure to hazards such as unprotected heights
> and dangerous machinery. He is able to remember, understand, and
> carry out routine, repetitive tasks or instructions that can be learned
> within a period of 30 days or by demonstration consistent with
> occupations of SVP 1 or SVP2 and the GED level should not
> exceed the level 2.

AR 18. Based on these limitations, at step four, the ALJ found that Plaintiff could not perform

any past relevant work. AR 22. At step five, the ALJ found that, considering Plaintiff's age,

education, work experience, and RFC, Plaintiff could perform jobs that exist in significant

numbers in the national economy, including hand package inspector  (20,900 jobs in the national

economy), office helper (22,900 jobs in the national economy), and electrical accessories

assembler (79,000 jobs in the national economy). AR 23-24. The ALJ thus concluded that

Plaintiff was not disabled. *Id.*

## DISCUSSION

Plaintiff argues that the ALJ erred by rejecting Plaintiff's symptom testimony, failing to

address the lay witness testimony via letter written by Plaintiff's daughter, failing to

acknowledge Plaintiff's amended onset date in the ALJ's written decision, and finding that

significant jobs are available to Plaintiff in the national economy. The Court addresses each

alleged error in turn.

## A.  Plaintiff's Symptom Testimony

A claimant "may make statements about the intensity, persistence, and limiting effects of

his or her symptoms." Social Security Ruling (SSR) 16-3p, 2017 WL 5180304, at *6

(Oct. 25, 2017). There is a two-step process for evaluating a claimant's testimony about the

severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591

(9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective

medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character" and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, 2017 WL 5180304, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the

Commissioner, medical providers, and others regarding the claimant's location, frequency, and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications, and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

### 1.  Amount of Treatment

The ALJ rejected Plaintiff's symptom testimony in part because Plaintiff "received little to no treatment for his alleged impairments." AR 19. Plaintiff argues that this is not a clear and convincing reason supported by substantial evidence because the ALJ did not inquire into whether there was a good reason for Plaintiff's failure to seek further treatment. The Commissioner responds that the ALJ need only address the reasons that a claimant raises at the hearing or submits into the record, and because Plaintiff had not done so, the ALJ did not need to make further inquiries.

Routine, conservative treatment can be sufficient to discount a claimant's subjective testimony regarding the limitations caused by an impairment. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). Not seeking an "aggressive treatment program" permits the inference that symptoms were not "as all-disabling" as the claimant reported. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. § 404.1529(c)(3). Before discounting symptom testimony due to the plaintiff's conservative treatment, however, the ALJ must first consider "possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." SSR 16-3p, 2017 WL 5180304, at *9; *see Molina v. Astrue*, 674 F.3d 1104, 1113 n.5 (9th Cir. 2012) ("Social Security Rulings (SSRs) do not carry the force of law, but they are binding on ALJs nonetheless." (simplified)). The ALJ "may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints." SSR 16-3p, 2017 WL 518304, at *9. If the claimant has a good reason for not seeking more aggressive treatment, conservative treatment is not a proper basis for rejecting the claimant's subjective symptoms. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

SSR 16-3p suggests that there is at least some obligation on the part of the ALJ to ask the claimant why he or she did not seek further treatment before discounting the plaintiff's testimony on that basis. *See* SSR 16-3p (stating that an ALJ must consider "possible reasons" for conservative treatment and that an ALJ may need to contact the claimant or raise the issue at the hearing); *see also Eitner v. Saul*, 835 Fed. App'x 932, 933 (9th Cir. 2021) (citing SSR 16-3p and stating that failure to pursue more aggressive treatment was not a clear and convincing reason to

reject the plaintiff's testimony because the "ALJ failed to consider possible reasons why Claimant did not seek or obtain treatment" and the ALJ only asked the plaintiff whether he had received treatment, but "the inquiry ended there"). The Commissioner cites *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989), for the proposition that the claimant must give a reason at the hearing for conservative treatment without any inquiry by the ALJ. *Fair*, however, predates SSR 16-3p, which superseded SSR 96-7p. Under SSR 96-7p, the ALJ could only reject symptom testimony for lack of treatment if he or she first considered "any explanations that the individual may provide, or other information in the case record." SSR 96-7p, 1996 WL 374186, at *7 (July 2, 1996). This obligation differs from SSR 16-3p, which requires the ALJ to consider any "possible reasons" for the claimant's conservative treatment and specifically provides that the ALJ may need to contact a claimant or ask questions of a claimant. SSR 16-3p, at *9. The burden shifted between SSR 96-7p and SSR 16-3p. Thus, the Commissioner's reliance on *Fair* for the proposition that the burden was solely on Plaintiff to offer an explanation at the hearing for the lack of treatment is misplaced.

In any event, the record before the ALJ shows that no medical provider recommended any course of treatment more extensive than what Plaintiff had already pursued. Plaintiff has undergone four back surgeries for his lower back pain. AR 289; *see also* AR 295-96 (x-ray documenting hardware installed in Plaintiff's spine). He also had at least two surgeries on his left hand after it was partially amputated in a car crash. AR 289-90. The ALJ did not identify any possible further effective treatment that Plaintiff could have pursued or any treatment recommended by any of Plaintiff's medical providers that Plaintiff refused. In considering the failure to seek more aggressive treatment, "an ALJ should account for whether there is further effective treatment that would benefit the individual." *Torres v. Kijakazi*, 2021 WL 5638008,

at *2 (9th Cir. Dec. 1, 2021) (citing SSR 16-3p); *see also Lapeirre-Gutt v. Astrue*, 382 Fed.

App'x 662, 664 (9th Cir. 2010) ("While Lapeirre-Gutt has not undergone any surgery since that

time, the record does not reflect that more aggressive treatment options are appropriate or

available. A claimant cannot be discredited for failing to pursue non-conservative treatment

options where none exist."); *Oliverio v. Colvin*, 2015 WL 1894299, at *6 (C.D. Cal.

Apr. 27, 2015) ("The ALJ failed to articulate what, if any, other treatment was currently

recommended or available for plaintiff's physical and mental impairments.").

　　　　Further, "it is a questionable practice to chastise one with a mental impairment for the

exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465

(9th Cir. 1996) (quoting *Blankenship v. Bowen,* 874 F.2d 1116, 1124 (6th Cir.1989)). Plaintiff

has demonstrated significant cognitive decline since his traumatic brain injury in 2014. *See*

AR 272. Plaintiff was diagnosed with "unspecified neurocognitive disorder" in 2017. AR 281.

Less than one month after Plaintiff's date last insured, Plaintiff tested in the "extremely low"

range for processing speed, symbol search, coding, auditory memory, visual memory, immediate

memory, delayed memory, logical memory, delayed recall, and visual reproduction, among other

tests. *See* AR 277-79, 285. Later that year, he again tested in the "extremely low range" for

"intellectual ability." AR 300-01. Plaintiff also testified that his daughter, Elizabeth U., helps

Plaintiff with his daily activities, such as grocery shopping and taking him to appointments.

AR 40. Elizabeth submitted a letter into the record stating that Plaintiff often calls her "multiple

times to tell [her] the exact same thing" and that she schedules his appointments for him, drives

him to appointments, pays his bills, and fills out his paperwork. AR 226. Considering Plaintiff's

mental impairments that impede his memory and ability to schedule his own appointments, it

was improper to discredit Plaintiff's testimony on the basis that he has not sought out more aggressive treatment.

### 2. Activities of Daily Living

The Commissioner argues that the ALJ discounted Plaintiff's testimony based on Plaintiff's activities of daily living. While summarizing Plaintiff's testimony, the ALJ stated: "On a daily basis, [Plaintiff] lives by himself, takes care of two cats and one dog, prepares meals, does the laundry, and watches television." AR 18. The ALJ then stated that she found the summarized testimony not fully consistent with the record for the reasons explained, and proceeded to discuss the reasons. Thus, it does not appear that the ALJ was discounting Plaintiff's testimony based on his activities of daily living. Even if the ALJ intended to so, this reason would fail.

Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). For daily activities to discount subjective symptom testimony, the activities do not need to be equivalent to full-time work; it is sufficient that the plaintiff's activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. A claimant, however, need not be utterly incapacitated to receive disability benefits, and completion of certain routine activities is insufficient to discount subjective symptom testimony. *See id.* at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled."). The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in

any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity be inconsistent with the plaintiff's claimed limitations to be relevant to his or her credibility and noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations"). Moreover, particularly with certain conditions, cycles of improvement may be a common occurrence, and it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding that a plaintiff is capable of working. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

The minimal activities recited by the ALJ are the type of activities the Ninth Circuit repeatedly has stated are insufficient to discredit subjective symptom testimony. Nor does the ALJ state what testimony the minimal activities contradict. *Cf. Smolen*, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (holding that it is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible"). Social Security claimants cannot be expected to do nothing but sit in a dark corner or find themselves subject to discredited subjective testimony. *See Benecke*, 379 F.3d at 594; *Vertigan*, 260 F.3d at 1050; *Reddick*, 157 F.3d at 722. Even construing the ALJ's opinion as asserting Plaintiff's activities of daily living as a reason to discount his testimony, this reason is not clear and convincing or supported by substantial evidence in the record.

### 3. Objective Medical Evidence

An ALJ may consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain." *Rollins v. Massanari*, 261 F.3d 853, 857

(9th Cir. 2001). The ALJ may not, however, reject subjective testimony solely because it was not fully corroborated by objective medical evidence. *Robbins*, 466 F.3d at 883; *see also* 20 C.F.R. § 404.1529(c)(2) (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements").

Because the Court has rejected the other reasons provided by the ALJ for discounting Plaintiff's testimony, even if Plaintiff's claimed limitations were not supported by the objective medical record, that cannot, by itself, stand as the clear and convincing reason supported by substantial evidence sufficient to discount Plaintiff's subjective symptom testimony. Thus, the ALJ erred in her evaluation of Plaintiff's testimony.

## B. Lay Witness Testimony

Elizabeth U. submitted a letter into the record that describes the many way she assists Plaintiff with his household chores and errands. *See* AR 226. The ALJ did not address that letter in his decision. Plaintiff argues that this was harmful error. The Commissioner responds that any error in failing to address Elizabeth's letter was harmless because her testimony mirrored Plaintiff's testimony and the ALJ provided clear and convincing reasons for rejecting Plaintiff's testimony.

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment. *Id.* In rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane

reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114.

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen*, 100 F.3d at 1467 (9th Cir. 1996)). Such an error may be harmless, and a court must determine whether the error is "'inconsequential to the ultimate nondisability determination' in the context of the record as a whole." *Id.* at 1122 (quoting *Carmickle*, 533 F.3d at 1162-63). The error is harmless, for example, "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Id.* at 1117. When an ALJ ignores uncontradicted lay witness testimony that is highly probative of a claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

Plaintiff filed his application for benefits on November 21, 2017. For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. § 404.1520c governs how an ALJ must evaluate evidence from medical sources, which includes a clarification on how an ALJ evaluates nonmedical lay testimony. *See* 20 C.F.R. § 404.1520c(d). Subsection (d) of the new regulations provides: "We are not required to articulate how we considered evidence from nonmedical sources using the requirements in paragraphs (a)-(c) in this section." *Id.* Subsections (a) through (c) lay out the new standards for evaluating medical opinion evidence. 20 C.F.R. § 404.1520c(a)-(c). Thus, under the new regulations, the ALJ is not required to use the standards for evaluating medical opinion evidence when evaluating lay witness testimony.

The Ninth Circuit has not yet addressed whether the new regulations affect the requirement in the Ninth Circuit that an ALJ must give germane reasons for rejecting lay witness testimony. Some courts have suggested that the new regulations may remove the ALJ's obligation to address lay testimony altogether, including any obligation to articulate germane reasons for disregarding lay testimony. *See, e.g.*, *Gretchen S. v. Saul*, 2020 WL 6076265, at *8 (D. Or. Oct. 15, 2020) ("[T]here is an argument that the ALJ is no longer required to provide 'arguably germane reasons' for disregarding such statements, as the Ninth Circuit has traditionally required."). On the Court's reading, however, the new regulations do not appear to do away with the ALJ's obligation to address lay witness testimony altogether. Instead, it only clarifies that the ALJ does not need to use the new standards for evaluating medical opinion evidence when evaluating non-medical source lay testimony. *See* 20 C.F.R. § 404.1520c(d). Because there are no provisions of the new regulations that unambiguously remove the ALJ's obligation to address lay witness testimony, it follows that the ALJ must continue to give germane reasons for discounting lay witness testimony. Further, courts have continued to conclude under the new regulations that an ALJ's failure to address lay testimony is error. *See, e.g.*, *Paulette N. v. Saul*, 2021 WL 4902421, at *10 (N.D. Cal. Oct. 21, 2021) (stating that the ALJ's failure to discuss the plaintiff's daughter's testimony was harmful error); *Christopher C. v. Kijakazi*, 2021 WL 4061557, at *8 (D. Or. Sept. 7, 2021) (stating that the ALJ's failure to address the plaintiff's father's testimony was harmful error); *Kay J. v. Comm'r of Soc. Sec.*, 2021 WL 4087833, at *3 (W.D. Wash. July 7, 2021) ("The Court agrees the ALJ erred by failing to address the lay witness testimony.").

The Commissioner argues that any error the ALJ committed in failing to address Elizabeth's letter was harmless because Elizabeth's testimony identified no limitation not already

accounted for in Plaintiff's testimony and the Court can therefore discount Elizabeth's letter for the same reasons the ALJ rejected Plaintiff's testimony. Because we rejected the ALJ's reasons to discount Plaintiff's testimony, those reasons do not provide a basis to discount Elizabeth's testimony. Thus, the ALJ committed harmful error.

## C.  Amended Alleged Onset Date

Plaintiff argues that the ALJ erred by failing to acknowledge Plaintiff's amended alleged onset date in the ALJ's decision. At the hearing, the ALJ allowed Plaintiff to amend his alleged onset date from January 30, 2013 to November 13, 2016. AR 52. The ALJ, however, did not acknowledge the amended date in her written decision. *See* AR 15. Plaintiff argues this error was harmful because it affects his eligibility for disability under the Medical-Vocational Guidelines (the Grids). As relevant here, the Grids provide that a plaintiff "approaching advanced age" (50 to 54 years old), limited to sedentary work, with a high school degree, whose previous work experience was skilled or semiskilled but does not provide for transferable skills is presumably disabled. 20 C.F.R. Part 404, Subpart P, App'x 2, § 201.14. Plaintiff turned 50 years old after his original alleged onset date but before his amended alleged onset date and before his date last insured.

Any error the ALJ made in failing to include Plaintiff's amended alleged onset date in her written decision is harmless because Plaintiff did not meet the requirements for disability under the Grids at any point before his date last insured. As the ALJ explained in her decision, though Plaintiff reached the "approaching advanced age" category before his date last insured, the Grids did not direct a finding of "disabled" because Plaintiff was not limited to sedentary work. AR 21. Plaintiff's age category on the date of the alleged onset does not change this analysis. Thus, irrespective of whether the ALJ acknowledged Plaintiff's amended alleged onset date in her decision, Plaintiff does not qualify for disability under the Grids.

**D.  Step Five Finding**

Plaintiff argues that substantial evidence does not support the ALJ's step five finding because the Vocational Expert (VE) inflated the number of jobs available to Plaintiff. At the hearing, Plaintiff asked the VE how he obtained the job numbers he identified. AR 47. The VE testified that he used a program called "Job Browser Pro." *Id.* Plaintiff then submitted evidence to the Appeals Council showing that Job Browser Pro reported numbers much lower than what the VE identified. *See* AR 230-31. The Commissioner responds that Plaintiff did not adequately preserve that argument because he did not request supplemental briefing before the ALJ.

A court must consider the evidence the plaintiff presents to the Appeals Council. *See Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1159-60 (9th Cir. 2012) ("We hold that when a claimant submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence."). "[A] claimant who wishes to challenge the factual basis of a [VE's] estimate of the number of available jobs in the regional and national economies must raise this challenge before administrative proceedings have concluded." *Shaibi v. Berryhill*, 883 F.3d 1102, 1103 (9th Cir. 2017); *see also id.* at 1108 (holding that the plaintiff had not preserved his challenge to the ALJ's reliance on the VE's job numbers because the plaintiff did not "cross-examine the VE as to the accuracy of those [numbers], or *challenge that accuracy before the Appeals Council*" (emphasis added)). A court must consider additional materials that the plaintiff did not present to the ALJ but did present to the Appeals Council even when the Appeals Council denied the claimant's request for review. *Brewes*, 682 F.3d at 1159-60; 20 C.F.R. § 404.976(b).

Because a VE's testimony is "one type of job information that is regarded as inherently reliable," *Buck*, 869 F.3d at 1051, substantial evidence supports an ALJ's findings about job numbers based on the VE's testimony when the plaintiff's only challenge to the VE's testimony is in the form of job-numbers data from a source different from the source relied on by the VE. *See, e.g.*, *Solano v. Colvin*, 2013 WL 3776333, at *1 (C.D. Cal. July 16, 2013) (finding a plaintiff's data from a source not relied on by the VE did not displace the reliability of the VE's testimony); *see also Wright v. Berryhill*, 692 F. App'x 496, 497 (9th Cir. 2017) (holding that Plaintiff's "alternative job numbers and criticism of the VE's sources" was not "a persuasive challenge to the ALJ's reliance on the VE's proffered job numbers"). When a plaintiff tenders vastly different job numbers from the same source as the VE, however, remand for the ALJ to address the inconsistency is warranted. *Buck*, 869 F.3d at 1052.

        As a threshold matter, Plaintiff was not required to request supplemental briefing before the ALJ as the Commissioner contends. *See Brewes*, 682 F.3d at 1159-60. Plaintiff preserved his argument by questioning the VE during the hearing and then submitting supplemental evidence to the Appeals Council. *See id.* Remand is warranted here because Plaintiff presents vastly different job numbers than did the VE, and they both used Job Browser Pro. *See* AR 47, 230-31. The VE testified that there were 20,900 hand packager and inspector jobs, 22,900 office helper jobs, and 79,000 electrical accessories assembler jobs available in the national economy. AR 46. According to Plaintiff, however, Jobs Browser Pro showed that there were only 2,168 hand packager and inspector jobs, 3,711 office helper jobs, and no data available for electrical accessories assembler jobs in the national economy. AR 231. Plaintiff's evidence shows that in total, there may be as few as 5,879 jobs available to Plaintiff as opposed to the 122,800 that the VE asserted. That discrepancy "is simply too striking to be ignored." *Buck*, 869 F.3d at 1052.

PAGE 19 – OPINION AND ORDER

Considering that there may be only 5,879 jobs available to Plaintiff, the record lacks substantial evidence to support the ALJ's finding that Plaintiff can perform jobs that exist in significant numbers in the national economy. *See Randazzo v. Berryhill*, 725 F. App'x 446, 448 (9th Cir. 2017) (stating that 10,000 jobs "may not amount to a significant number of jobs in the national economy"); *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014) (stating that 25,000 jobs in the national economy was a "close call"); *Lisa L. v. Comm'r of Soc. Sec.*, 2018 WL 6334996, at *4 (D. Or. Dec. 5, 2018) (concluding that 11,084 jobs was not a significant number of jobs); *Watkins v. Comm'r Soc. Sec. Admin.*, 2016 WL 4445467, at *7 (D. Or. Aug. 22, 2016) (concluding that 11,084 jobs was not a significant number of jobs). Thus, the ALJ failed to meet the Commissioner's step five burden.

## E.  Remand

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any

useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

There remain ambiguities and conflicts in the record. The testimony of Plaintiff and Elizabeth needs to be properly evaluated. The ALJ also needs to take evidence about whether Plaintiff can perform jobs that exist in significant number in the national economy. *See Buck*, 869 F.3d at 1052 (remanding to address the inconsistency between the number of jobs presented by the VE and the plaintiff). Thus, the Court remands for further proceedings.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is REVERSED AND REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 3rd day of February, 2022.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge